

**ORDERED in the Southern District of Florida on May 03, 2011.**

_____
**A. Jay Cristol, Judge**
**United States Bankruptcy Court**

_____

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| In re: | Case No. 06-12645-AJC |
| AMERICA CAPITAL CORPORATION, | Chapter 11 |
| Debtor. _____/ | |
| AMERICA CAPITAL CORPORATION, | Adv. Pro. No. 07-01587-AJC |
| Plaintiff, | |
| v. | |
| ROBERT MARLIN, ROBYN MARLIN, T.C. INVESTORS, INC., et al., | |
| Defendants. _____/ | |
| T.C. INVESTORS, INC., | |
| Counter-Plaintiff, | |
| v. | |
| AMERICA CAPITAL CORPORATION, | |
| Counter-Defendants. _____/ | |

ROBERT MARLIN, and T.C. INVESTORS, INC.,

        Third Party Plaintiffs,

v.

JACK BURSTEIN and STEVEN COOK,

        Third Party Defendants.
_____/

## MEMORANDUM DECISION AND ORDER DENYING MOTION TO DISMISS THIRD PARTY COMPLAINT

**THIS CAUSE** came before the Court on March 22, 2011, at the hearing on the Motion to Dismiss Third Party Complaint with Prejudice (the "Motion") [D.E. 70] filed by Non-debtors, Jack D. Burstein ("Burstein") and Steven R. Cook ("Cook"). The Court has carefully considered the Motion and the Response in Opposition to the Motion (the "Response") [D.E. 72] filed by Robert Marlin ("Marlin") and T.C. Investors, Inc. ("T.C. Investors"). The sole issue is whether state law claims of non-debtors, Marlin and T.C. Investors, against non-debtors, Burstein and Cook, have been settled and foreclosed as a result of settlements entered into with the Liquidating Agent in the instant bankruptcy proceedings. At the Hearing on the Motion, no evidence was presented by either party and the Court heard the argument of counsel. Upon review of the relevant legal authority and the record in this case, having heard argument of respective counsel, and being otherwise advised in the premises, the Court denies the Motion.

## BACKGROUND

In the Motion, Burstein and Cook ask this Court to dismiss with prejudice certain claims asserted against them by other non-debtors in this adversary proceeding, Marlin and T.C. Investors. These claims were first asserted in state court litigation originally commenced by the Debtor, America Capital Corporation ("ACC"), against Marlin and T.C. Investors, and ultimately

removed to this Court with the filing of the Debtor's bankruptcy. The Court finds the Motion to be without merit. Specifically, the Motion asks this Court to grant Burstein and Cook a final, binding adjudication, with prejudice, of claims between non-debtors that have never been adjudicated or settled by and between the non-debtor parties. While Marlin and T.C. Investors and Burstein and Cook have each respectively settled claims by and between themselves and the bankruptcy estates of ACC and its subsidiary, TransCapital Financial Corporation ("TFC") (together, the "Debtors"), those settlements did not, and legally could not, bind, settle or foreclose the claims that Marlin and T.C. Investors might have against Burstein or Cook. Indeed, the settlement between Marlin and T.C. Investors and the Liquidating Agent for ACC and TFC expressly provides that it is without prejudice to Marlin's or T.C. Investors' rights or claims against Burstein and Cook. This discussion warrants analysis not only of the legal premises involved, but also of the factual and procedural history behind these proceedings.

On April 29, 2004, ACC filed an action in the Circuit Court in and for the Eleventh Judicial Circuit in and for Miami-Dade County, Florida (Case No.: 04-09765-CA-01) against Marlin, Robyn Marlin and T.C. Investors (the "ACC State Court Action"). On April 26, 2005, Marlin filed a separate, shareholder derivative suit in the Circuit Court in and for the Eleventh Judicial Circuit in and for Miami-Dade County, Florida (Case No.: 0-07103-CA-13) against Burstein, Cook, Roberto Duenas, and Gilda Burstein, and against ACC as a nominal defendant (the "Derivative Action"). In the ACC State Court Action, Marlin along with T.C. Investors filed a counterclaim against ACC and third-party claims against Burstein and Cook, which added Burstein and Cook as additional parties to the ACC State Court Action.[1]

Contrary to the characterizations by Burstein and Cook, the claims asserted by Marlin

---

[1] Although styled as a "Third-Party Complaint" against Burstein and Cook, the claims against Burstein and Cook were in the nature of counter-claims against additional counter-claim defendants. The claims do not sound in indemnity.

and T.C. Investors against Burstein and Cook in the ACC State Court Action were personal to Burstein and Cook and distinct from the claims asserted in the Derivative Action. In the Amended Third Party Complaint in the ACC State Court Action, Marlin and T.C. Investors asserted claims for tortious interference with a contractual relationship against Burstein and Cook, fraud in the inducement against Burstein, fraudulent misrepresentation against Burstein, and breach of contract by Burstein based on a separate and distinct contract by and between Burstein, individually, and Marlin, individually. All of these claims allegedly injured Marlin and T.C. Investors directly, and were based on events that transpired in 2000 and thereafter. For example, Marlin's and T.C. Investors' tortious interference claims were predicated on actions allegedly taken by Burstein and Cook in 2002. Similarly, the fraud claims were predicated on misrepresentations allegedly made in July 2000.

In contrast, the claims asserted in the Derivative Action were claims belonging to ACC and were based on acts of alleged malfeasance by Burstein and Cook in connection with their management of ACC in the late 1980's and early 1990's. More specifically, the Derivative Action asserted corporate claims for breach of fiduciary duty to ACC arising out of, among other things: *(1)* the alleged failure by Burstein and Cook to conduct proper due diligence in connection with a proposed acquisition of AmeriFirst; *(2)* the adoption of a failed hedging program by Burstein and Cook that allegedly caused more than $20 million in losses for ACC; and *(3)* allegedly improper self-dealing by virtue of personal loans from ACC to Burstein.

On June 19, 2006, ACC and TFC filed petitions for relief under Chapter 11 of Title 11 (the "Bankruptcy Code"), styled as Case Nos. 06-12645-BKC-AJC (the "ACC Case") and 06-12644-BKC-AJC (the "TFC Case"), respectively (jointly, the "Bankruptcy Cases"). Thereafter, on August 3, 2007, ACC removed the entire ACC State Court Action to the Bankruptcy Court

where it became Adv. No. 07-01587-BKC-AJC-A (this "Adversary Case"). Marlin's and T.C. Investors' claims against Burstein and Cook were removed to the Bankruptcy Court as part and parcel of the removal of the entire ACC State Court Action. [D.E. 1].

The Derivative Action was also removed on or about August 3, 2007, and became Adv. No. 07-01588-BKC-AJC-A. Shortly following the removal of the ACC State Court Action, Marlin and T.C. Investors filed a motion requesting that the Court remand the case to state court [D.E. 10], which motion was opposed by ACC [D.E. 20].

This Court has never entered a ruling on the Motion to Remand, leaving this Adversary Case in limbo for the past several years. As a result, this Adversary Case has never been litigated and the claims by and between Marlin and TFC and ACC, and by and between Marlin and TFC and Burstein and Cook have never been adjudicated. The Liquidating Agent repeatedly stated that he intended to amend the claims asserted in this Adversary Case, and sought several extensions of time to do so [D.E. 44, 48, 51, 56, 59], but ultimately never filed any amended Complaint.

On or about November 1, 2006, T.C. Investors filed claims in the ACC and TFC Bankruptcy Cases [Claim Nos. 13 and 67, respectively] (the "T.C. Claims"). Those claims were predicated on an agreement by and between ACC and T.C. Investors dated July 25, 2000 (the "T.C. Agreement"), pursuant to which ACC agreed to pay T.C. Investors a percentage of any recovery obtained in the Goodwill Litigation[2] against the United States for services rendered by T.C. Investors in connection with negotiating and implementing an agreement amongst ACC's creditors.

Simultaneously with the T.C. Agreement, Burstein and Cook entered into a separate

---

[2] The Goodwill Litigation refers to the action brought in the U.S. Court of Federal Claims in response to the Office of Thrift Services' improper seizure of a bank owned by TFC in the case styled, *American Capital Corp., et al. v. The United States*, Case No. 95-523C.

Collateral and Compensation Allegation Agreement (the "Compensation Agreement") with Marlin and T.C. Investors, one to which neither of the Debtors was a party, in which Burstein and Cook agreed to share with T.C. Investors a portion of any amounts they received from the Goodwill Litigation pursuant to their compensation agreements with the Debtors. The Liquidating Agent objected to the T.C. Claims. With respect to the claim T.C. Investors filed in the TFC bankruptcy case, the Liquidating Agent's objection was predicated, in part, on the contention that TFC could not be liable because it was not a party to the T.C. Agreement. [Case No. 06-12644-BKC-AJC D.E. 475 and D.E. 904]].

In May 2010, as part and parcel of negotiations relating to the other contested matters involving Marlin, T.C. Investors, and related entities, Marlin and T.C. Investors agreed to withdraw the T.C. Claims against the ACC and TFC estates. That agreement was expressly predicated and conditioned upon the Liquidating Agent's acknowledgment that the withdrawal of the T.C. Claims was without prejudice to any claims that either Marlin or T.C. Investors might have against the non-debtors, Burstein and Cook. That is memorialized in both the Motion and Order approving the withdrawal of the T.C. Claims, which both expressly provide said withdrawal is without prejudice to any claims Marlin or T.C. Investors might have against anyone other than the Debtors, ACC and TFC. [Case No. 06-12645-BKC-AJC D.E. 398, 399 and Case No. 06-12644-BKC-AJC D.E. 895, 899].

On or about June 10, 2010, the Liquidating Agent filed a Motion in the TFC Bankruptcy Case to approve a Settlement Agreement by and between the Liquidating Agent and Burstein and Cook (the "Burstein/Cook Settlement"). [Case No. 06-12644-BKC-AJC D.E. 904]. The Burstein/Cook Settlement settled certain claims for compensation that Burstein and Cook asserted in the TFC Case. More specifically, Burstein and Cook had asserted claims for

compensation against TFC based on certain agreements with TFC that awarded Burstein and Cook a portion of the proceeds realized in the Goodwill Litigation [Claim Nos. 49, 50, 51 and 52]. Burstein and Cook claimed entitlement to approximately $8 million under those agreements. The Liquidating Agent proposed to settle those claims for $5.5 million.  Neither Marlin nor T.C. Investors were parties to the Burstein/Cook Settlement.

Marlin entered into a separate Settlement Agreement with the Liquidating Agent resolving all claims by and between the TFC and ACC Estates on the one hand, and Marlin, T.C. Investors, Robyn Marlin, and various related entities (the "Marlin Parties") on the other, including the claims between ACC and Marlin and T.C. Investors in this Adversary Case (the "Marlin Settlement"). The Liquidating Agent filed Motions to approve the Marlin Settlement on March 7, 2011, in both the ACC Case [Case No. 06-12645-BKC-AJC D.E. 473] and the TFC Case [Case No. 06-12644-BKC-AJC D.E. 1001]. Both Motions were filed on negative notice pursuant to Rule 9013, with objections due on or before March 28, 2011. No objections to the Marlin Settlement were timely filed in either the TFC Case or the ACC Case.

Under the express terms of the Marlin Settlement, only the claims by and between the Marlin Parties and the estates are being settled and dismissed. The Marlin Settlement expressly provides that it is without prejudice as to the Marlin Parties' claims against Burstein and Cook and that any claims by and between the Marlin Parties and Burstein and Cook are **not** being settled and dismissed.  Moreover, the Liquidating Agent has agreed in the Marlin Settlement that it does not object to the granting of the Marlin Parties' long-pending motion to remand those remaining claims, which are now solely between non-debtors, to the state court for litigation.

While there have been settlement agreements by and between the Marlin Parties and the Liquidating Agent, and by and between Burstein and Cook and the Liquidating Agent, there has

never been any settlement agreement that resolves or purports to resolve claims that might exist by and between non-debtors, Marlin, T.C. Investors and any other Marlin Parties, and non-debtors, Burstein and Cook. To the contrary, the agreements the Marlin Parties have entered into with the Liquidating Agent were expressly predicated and conditioned upon the acknowledgement that such agreements were **without prejudice** to the Marlin Parties' rights and claims against Burstein and Cook.

## ANALYSIS

While the grounds to support their motion are not exactly clear, Burstein's and Cook's request for a dismissal with prejudice appears to be based on: *(1)* the Burstein/Cook Settlement; *(2)* the Marlin Settlement; or *(3)* assertions made by the Liquidating Agent regarding his view or opinion of the underlying merits of the Marlin Parties' claims. However, none of the foregoing is dispositive of any claims that the Marlin Parties might have against Burstein and Cook. As the only issue to be determined is whether the Marlin Parties' claims against Burstein and Cook have been settled and foreclosed, this Court answering in the negative, the Motion is denied for the following reasons.

### A.  *Settlement Agreements with the Liquidating Agent are Read Strictly and Bind Only the Parties to Such Settlements.*

With respect to the Burstein/Cook Settlement by and between the Liquidating Agent and Burstein and Cook, it is axiomatic that such a settlement is not binding on Marlin and T.C. Investors or dispositive of any rights or claims they might have. The Liquidating Agent simply does not have the power or authority to compromise or dispose of Marlin's and T.C. Investors' claims against Burstein and Cook through any agreement to which Marlin and T.C. Investors were not parties. Apart from the Liquidating Agent's lack of authority to settle and dispose of Marlin and T.C. Investors' claims, there is nothing in the Burstein/Cook Settlement that even

purports to settle such claims. The Burstein/Cook Settlement is solely between Burstein, Cook and the Liquidating Agent and purports to settle and release only claims by and between them. In fact, the original Burstein/Cook Settlement contained a provision (paragraph 18) that, while not purporting to settle Marlin's and T.C. Investors' claims, purported to require the Liquidating Agent to secure a final, binding adjudication of those claims in favor of Burstein and Cook as a condition to the Burstein/Cook Settlement. However, Burstein and Cook later agreed to an amendment to the Burstein/Cook Settlement to drop even that condition when it became clear that the Liquidating Agent could not and would not secure such an adjudication on behalf of Burstein and Cook. [Case No. 06-12644-BKC-AJC D.E. 904, Ex. B]. This alone was a concession by Burstein and Cook that the Liquidating Agent could not unilaterally dispose of claims belonging to Marlin and T.C. Investors and had not secured any adjudication disposing of those claims.

Burstein and Cook alternatively suggest that the Liquidating Agent's voluntary dismissal of the Derivative Action, which was done pursuant to the Burstein/Cook Settlement, somehow constitutes a binding adjudication as to Marlin and T.C. Investors that forecloses them from litigating the claims they have asserted against Burstein and Cook in this Adversary Case. Such a contention lacks any merit.

For starters, there has been no adjudication of any claims on their merits. The Eleventh Circuit has clearly stated that voluntary dismissal pursuant to a settlement stipulation is not an "actually litigated" claim otherwise entitled to full preclusive effect. *See Norfolk Southern Corp v. Chevron USA, Inc.*, 371 F.3d 1285, 1288 (11th Cir. 2004) (where parties consent to a dismissal based on a settlement agreement, the principles of *res judicata* apply in a somewhat modified form to the matters specified in the settlement agreement, rather than the original complaint).

There is a difference between a substantive loss on the merits of a claim and voluntary dismissal pursuant to settlement. *Id.* Accordingly, a voluntary dismissal of claims against Burstein and Cook by the Liquidating Agent can have no preclusive effect beyond what the settlement agreement provides, and cannot bind nonparties to the settlement, such as Marlin and T.C. Investors.

Moreover, even had the shareholder derivative claims been "actually litigated" instead of voluntarily dismissed by the Liquidating Agent pursuant to a settlement, it would still have had no preclusive effect on the claims that Marlin and T.C. Investors have asserted against Burstein and Cook in this adversary proceeding. To begin, there is no identity of parties between the two actions. T.C. Investors was never even a party to the Derivative Action and Marlin did not assert the claims therein in his individual capacity, but rather as a shareholder standing in the shoes of the corporation itself. Indeed, Florida law recognizes the distinction between individual and derivative plaintiffs, as it is well settled that a litigant may not bring both personal and derivative claims in one suit. *Dep't of Ins. v. Coopers & Lybrand*, 570 So. 2d 369, 370-371 (Fla. 3d DCA 1990). *See also Pages v. Dominguez By and Through Dominguez*, 652 So. 2d 864, 867 (Fla. 4th DCA 1995) (holding that a party may not combine causes of action brought in different representative capacities into a single lawsuit); *County of Sarasota v. Wall*, 403 So. 2d 500, 501 (Fla. 2d DCA 1981) (filing separate suits is proper when a cause of action accrues to a plaintiff in an individual as well as representative capacity although they arise out of the same occurrence).

Further, upon the filing of bankruptcy, the ACC shareholder derivative claims vested in the Liquidating Agent, who had the sole authority to litigate or settle them. *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 439 (S.D.N.Y. 1993), *aff'd* 17 F.3d 600 (2d Cir. 1994) (Once a

corporation is in bankruptcy, the trustee alone has the right to pursue such actions against the debtor's officers and directors.); *ANR Ltd. Inc. v. Chattin*, 89 B.R. 898, 901 (D. Utah 1988) (citing *Delgado Oil Co., Inc. v. Torres,* 785 F.2d 857, 860 (10th Cir. 1986)) ("Because claims for damages from corporate mismanagement are derivative in nature, such claims are enforceable solely by the trustee and may not be asserted by any one creditor."). *See also Pepper v. Litton,* 308 U.S. 295, 307 (1939) (A derivative suit enforcing fiduciary obligations is normally brought by the corporation, or shareholders through a derivative action, but in the event of the corporation's bankruptcy, such obligations are enforceable by the trustee.); *In re General Dev. Corp.*, 179 B.R. 335, 338 (S.D. Fla. 1995) ("A corporation's filing for bankruptcy cuts off a shareholder's ability to bring a derivative claim."). The Derivative Action was thus no longer Marlin's suit to control, and he was no longer a party, in any capacity, with the power to fully and meaningfully litigate the claims.

Importantly, the Liquidating Agent's authority to pursue, settle, or dismiss only stretched so far as those **derivative** claims initially asserted by Marlin and T.C. Investors. *See In re Latin Inv. Corp*., 168 B.R. 1, 4 (Bankr. D.C. 1993) (a trustee's duties and powers only go as far as those possessed by the debtor itself, so a trustee may not allege causes of action belonging to individual creditors). Accordingly, the Liquidating Agent did not have the power to dismiss or otherwise affect the personal, individual claims here at issue in Marlin's and T.C. Investors' **individual** action.

Just as importantly, and contrary to the suggestion of Burstein and Cook, the facts involved and claims asserted in the Derivative Action are completely separate and distinct from the claims asserted against Burstein and Cook by Marlin and T.C. Investors in this case. The claims against Burstein and Cook in the Derivative Action were necessarily claims that **belonged**

**to ACC.** They were based on alleged malfeasance and breaches of fiduciary duty owed to ACC in connection with Burstein's and Cook's management of the business affairs of the Debtors that took place in the late 1980s and early 1990's. [Adv. Pro. No. 07-01588- BKC-AJC D.E. 1-1]. In contrast, the claims asserted by Marlin and T.C. Investors in this case are personal to them and based on events that took place in 2000 and thereafter. By way of example, T.C. Investors claims that Burstein fraudulently induced Marlin into the July 25, 2000, Agreements and breached a separate contract that he had with Marlin. [D.E. 1-3]. Though the background facts in each case have some overlap, the underlying, operative facts and claims arising from the Amended Third Party Complaint at issue in this adversary were not at issue in the Derivative Action. In short, the voluntary dismissal of the Derivative Action does not and could not have any binding, dispositive effect on Marlin's and T.C. Investors' claims against Burstein and Cook. *See CSX Transp., Inc. v. Brotherhood of Maintenance of Way Employees*, 327 F.3d 1309, 1317 (11th Cir. 2003) (where parties and issues were the same as previous case, but the controlling facts differed, action was **not** precluded).[3]

### B. *The Marlin Parties' Settlement with the Liquidating Agent Expressly Reserves Their Right to Pursue the Third Party Action Against Burstein and Cook.*

The Marlin Settlement with the Liquidating Agent and the Marlin Parties' agreement with the Liquidating Agent to voluntarily withdraw the T.C. Claims are similarly irrelevant and are in no way dispositive of any claims that the Marlin Parties might have against Burstein and Cook. To the contrary, both the Marlin Settlement and the Agreed Motion to Withdraw the T.C. Claims expressly provided that they were without prejudice to the Marlin Parties' rights and claims

---

[3] Even if Florida law applied, the same would result. *See Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486, 1509 (11th Cir. 1985) (citing Florida case law). The Florida doctrine of *res judicata* bars subsequent litigation where there exists identity of *(1)* the thing sued for; *(2)* the cause of action; *(3)* persons and parties to the actions; **and** *(4)* the quality or capacity of the person for or against whom the claim is made. *Id.* (emphasis added); *West v. Kawasaki Motors Manuf. Corp., USA*, 595 So. 2d 92, 94 (Fla. 3d DCA 1992) (citations omitted).

against Burstein and Cook. Indeed, the Liquidating Agent has agreed in the Marlin Settlement that the remaining claims between non-debtors, Marlin and T.C. Investors, and non-debtors, Burstein and Cook, should now be remanded to state court to be litigated.

The Marlin Parties were free to compromise claims solely against the Debtors and withdraw those claims with prejudice without compromising or prejudicing any claims they might have against Burstein or Cook. *See Lee & Sakahara Associates, AIA, Inc. v. Boykin Management Co.*, 678 So. 2d 394 (Fla. 4th DCA 1996) (settlement and dismissal of claims against three out of four defendants did not act to dismiss entire case, and plaintiff still had the right to continue pursuit of claims against remaining defendant); *Norfolk Southern Corp*, 371 F.3d at 1288 (parties can expressly reserve the right to sue on a particular claim in the future, though all that is required to determine the extent of the preclusive effect of the earlier consent judgment is an analysis of the intent of the parties.).

    ***C.    The Liquidating Agent's Opinion as to the Merits of the Third Party Complaint is Irrelevant and Does Not Warrant Dismissal of the Suit.***

Lastly, Burstein's and Cook's argument that the Liquidating Agent's statements regarding his evaluation or assessment of the merits of Marlin's and T.C. Investors' claims are somehow binding on Marlin or T.C. Investors or dispositive of their claims is frivolous. For example, Burstein and Cook cite to the motion the Liquidating Agent filed requesting approval of the settlement with Burstein and Cook [Case No. 06-12644-BKC-AJC D.E. 904] to suggest that Marlin and T.C. Investors should somehow be foreclosed from prosecuting their claims. In pertinent part, Burstein and Cook quote paragraphs 14 and 15, whereby the Liquidating Agent states that he disagrees with Marlin's assertion that TFC is liable to T.C. Investors for a portion of any monies distributed by TFC to Burstein and Cook by reason of the Compensation Agreement, because TFC is not a party to the Compensation Agreement. The Liquidating Agent

further suggests that there is no basis for any AMCAP liability to T.C. Investors under the Compensation Agreement or under a related compensation agreement with AMCAP dated July 25, 2000, and that, in any event, a condition precedent to the obligations of AMCAP, Burstein, and Cook under the Compensation Agreement or AMCAP's compensation agreement was not met by Marlin or T.C. Investors.  *See* Burstein and Cook Settlement Motion, ¶¶ 14-15; Motion, ¶ 10.  Unfortunately for Burstein and Cook, this language is of no import.

The Liquidating Agent's assessments and opinions, with which Marlin and T.C. Investors disagree, are not binding on Marlin and T.C. Investors.  The Liquidating Agent is merely a litigant, and this Court has not adopted the Liquidating Agent's views as to the merits of Marlin's and T.C. Investors' claims, nor were they even at issue before this Court.  Marlin and T.C. Investors are entitled to challenge those assessments and have them actually adjudicated in a court of law.

For all of the foregoing reasons, it is **ORDERED AND ADJUDGED** that:

A.    The Motion to Dismiss is **DENIED**.

B.    The Court shall enter a separate Order remanding the remaining claims in this action to state court for further adjudication.

# # #

**Submitted by:**
Marc Gottlieb, Esq.
Joan Levit, Esq.
Tamara J. Savin, Esq.
**AKERMAN SENTERFITT**
Las Olas Centre II
350 East Las Olas Blvd., Suite 1600
Fort Lauderdale, Florida 33301
954-463-2700 (ph)/ 954-463-2224 (fax)
joan.levit@akerman.com

Attorney Levit is directed to serve copies of this order on all interested parties listed and file a certificate of service.